**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MARK HURST,**<br><br>      **Petitioner,**<br><br>  v.<br><br>**WARDEN, MADISON CORRECTIONAL INSTITUTION,**<br><br>      **Respondent.** | **Case No. 2:09CV1042**<br><br>**JUDGE PETER C. ECONOMUS**<br><br>**OPINION AND ORDER FOR PETITIONER TO RESPOND** |

      This matter is before the Court for consideration of Petitioner Mark Hurst's ("Hurst") Petition for Writ of Habeas Corpus brought under 28 U.S.C § 2254 ("Petition"). (Dkt. # 3.) Also before the Court is Respondent Warden of the Madison Correctional Institution's ("Warden") Return of Writ (Dkt. # 13) and Hurst's Reply (Dkt. #14). For the reasons that follow, Hurst shall respond as directed in section VI of this Order.

**I. PROCEDURAL BACKGROUND**

      In September of 2007, a Licking County Grand Jury indicted Hurst for: (1) pandering obscenity involving a minor as defined by Ohio Revised Code § 2907.321(A)(5), (2) pandering sexually oriented matter involving a minor as defined by Ohio Revised Code § 2907.322(A)(5), and (3) illegal use of a minor in nudity-oriented material or performance as defined by Ohio Revised Code § 2907.323(A)(3). (Dkt. # 13-5 at 1-3). Hurst pleaded not guilty at his arraignment. (Dkt. # 13-5 at 1-3). On August 6, 2008, a jury found him guilty of all three charges and the Licking County Common Pleas Court sentenced him to a total of three years and three months incarceration. (Dkt. # 13-5 at 5-9.)

On August 14, 2008, Hurst filed a timely notice of appeal raising the following two assignments of error before the Ohio Court of Appeals, Fifth District ("state appeals court"):

> (1) Appellant's conviction for illegal use of a minor in nudity-oriented material was void as a matter of law for failing to state a culpable mental state (reflected in indictment).

> (2) Appellant's conviction was not supported by sufficient evidence and/or was against the manifest weight of the evidence (reflected in trial transcript).

(Dkt. # 13-5 at 12, 15).

The state appeals court denied both of Hurst's assignments of error and affirmed the judgment of the trial court on March 6, 2009. (Dkt. # 13-5 at 69-93.) On June 16, 2009, Hurst, *pro se*, filed a notice of appeal and a motion for delayed appeal in the Supreme Court of Ohio. (Dkt. # 13-6 at 24-27.) On July 29, 2009, the Supreme Court of Ohio denied the motion for delayed appeal. (Dkt. # 13-6 at 55.) On October 25, 2009, Hurst filed the instant Petition.[1] (Dkt. # 3.)

## II. FACTUAL BACKGROUND

The Court must presume correct the facts found by the state appeals court on its review of the record. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) ("... the findings of fact made by a state court are presumed correct and can only be contravened where the habeas petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous."). In its March 6, 2009 Order, the state appeals court made the following findings of fact:

> (¶2) Appellant worked for Robertson Construction Company in Licking County during the month of April 2007. Appellant was a field employee and had been injured on the job. Accordingly, appellant was placed on light duty and assigned to work in the office during that month.

---

[1] Hurst has also filed five motions for judicial release in the Licking County Court of Common Pleas. Four of those motions have been denied and one remains pending. (Dkt. # 13-5 at 94-98; Dkt. # 13-6 at 1-23, 56-69.)

(¶3) On April 25, 2007, Theresa Ruby, appellant's direct supervisor claimed to have witnessed appellant viewing pornography on a newly added computer station. She testified that she found appellant "in the other office." When Ms. Ruby walked behind appellant, she testified that she believed she saw he was looking at "pictures of naked women."

(¶4) Christian Robertson, of Robertson Construction contacted their outside computer Information Technology ["IT"] person, Richard Day, and the police. Mr. Day testified that the computer appellant had been using was installed at Robertson Construction approximately one week prior to this incident. Mr. Day looked at the computer's hard disk drive, the "C" drive, in an attempt to discover whether anyone was downloading anything that he or she should not have been. His investigation did not find any physical evidence of inappropriately downloaded material, or unauthorized folders created by someone using that computer workstation. However, when Mr. Day looked in the "temporary internet files" folder contained on the computer's hard disk drive, he found over 20,000 pictures. Upon opening and viewing several of the pictures, Mr. Day realized they were pornographic photographs. Mr. Day "locked down" the computer and suggested to Christian Robertson that he contact the police. Later that afternoon, Officer Brandy Huffman arrived at the scene to collect the computer. At her request, Mr. Day made two copies of the photographs found on the computer's hard drive to a CD-Rom to be used as evidence by the police.

(¶5) Diamond Boggs, a forensic computer expert with the Bureau of Criminal Identification and Investigation, testified that she had specific training related to detecting "virtual" children. She used this training while looking at the computer pictures at issue in the instant case. Ms. Boggs testified that the computer's hard drive contained approximately 14,000 photographs, which had been accessed April 20 through April 25, 2007. Ms. Boggs further testified that she found pictures that she believed to be child pornography, adult pornography and some that she could not discern whether or not it depicted adults or children. She testified that in her expert opinion virtual photographs of children are distinguishable from real children. She further testified that she did not find any indication that the photographs at issue were virtual, as opposed to real, children. In fact, despite her training in the area of detecting photographs of virtual children she testified that there was "nothing that tells me that they are not real children." Ms. Boggs explained that the person who had used the computer involved manually typed terms into the search engine in order to search for websites associated with child pornography. In fact, one such search the individual made a typographical error by initially typing tinyteenthungs.info, only to have to correct it. Ms. Boggs characterized the individual's access to these types of web pages as "[n]ot an accidental viewing of child pornography." Fifty pictures from the over 14,000 pictures found on the computers hard drive were selected by Ms. Boggs as possible child pornography. All of the 52 images were found in the computer's temporary internet cache folder. Those pictures were admitted into evidence at

appellant's jury trial.[2]

(¶6) Appellant was interviewed by the police and confessed that he had used the computer to view pornography. He admitted that seventy percent of the time that he had spent on the computer while at work he was viewing pornographic web sites. He also testified the he had "very -- almost embarrassing computer skills … I would have to have some basic computer skills" Appellant claimed that his co-workers told him "'Just get on it and play with it. Just get on it and play with it. It will come to you." Appellant testified that he "wasn't aware of what a site was at the time. I would just click on an image and another page could come up." Appellant did not know any of the web page addresses. However, appellant testified that his wife caught him viewing pornographic web sites on his home computer approximately eight years ago.

(¶7) Appellant testified that he did not know any of the web page addresses. Appellant also testified that the pages he visited would have "[pictures in an array arranged] 10 by 10 which would be 100 per page per screen" and that he did not look at all of the pictures on every screen. Appellant testified that three times "[web] pages would start to come up so fast and overlap that I couldn't stop them, so I would go up to the corner where the little x is and I would keep clicking on it, and it didn't stop it at all, so I crawled under the desk to unplug it [the computer]." Appellant further testified "hundreds and hundreds if not thousands and thousands" of websites or pages came up and he did not see the content of any of these pages. At trial, appellant specifically denied seeing any nude children or children engaged in sexual acts on the computer. Finally, appellant testified, "somehow child pornography ended up on that computer. I don't know how it got there and obviously other people don't know how it got there either"

[¶8] In his interview with the police, appellant described his affinity to pornography by adding the caveat that:

[¶9] "It …it's never been to a point of touching a kid or any kid that I see, you, you know. There's no attraction or any, you know, uh-young lady. Um … always been, you know … viewing pictures. … I am more a viewing thing, than an actual physical thing, you know."[3]

(Dkt. # 13-5 at 70-73.)

## III. STANDARD OF REVIEW

A petition for a writ of habeas corpus may only be granted when: (1) the state court's

---

[2] Ms. Boggs explained that there were actually fifty-two pictures; however, two of the photographs were duplicates. (2T. at 127-128).
[3] State's Exhibit 8-A (Transcript), at 6; and State's Exhibit 8-A (Transcript) at 6; and State's Exhibit 8-B (CD-ROM). See also, 2T. at 301.

adjudication of an issue was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceedings. 28 U.S.C. § 2254(d).

## IV. LAW AND ANALYSIS

In his Petition, Hurst sets forth the following nine grounds for relief:

GROUND ONE: Petitioner's conviction for illegal use of a minor in nudity oriented material was void as a matter of law for failing to state a culpable mental state. Supporting Facts: The mens rea of "recklessly" was not written into the indictment. Therefore it should not have been given in directions to the jury. See memorandum in support attached.

GROUND TWO: Petitioner's conviction was not supported by sufficient evidence and/or was against the manifest weight of the evidence. Supporting Facts: Digital images found in office computer were not authenticated, looked at, or tested by a digital imagery expert. No proof that images were of real children. See memorandum in support, attached. Asking a jury to determine if images were of real children was unfair to petitioner and against his constitutional rights to a fair trial.

GROUND THREE: Petitioner's conviction was not supported by sufficient evidence and/or was against the manifest weight of the evidence. Supporting Facts: All 52 images of child pornography were found in the temporary internet cache file with no evidence interaction by anyone. See memorandum in support, attached. The cache files had over 20,000 images in the file, showing the 52 images could have gotten in the file without petitioner seeing, knowing or soliciting. Petitioner will prove this to be true, the testimony of State's witnesses and State's evidence.

GROUND FOUR: Petitioner's constitutional rights were violated when petitioner did not receive a fair trial when prosecutor withheld evidence from defense. Supporting Facts: Richard Day testified that he gave Officer Huffman two CD's of internet history. Ms. Boggs testified that she gave Prosecutor a CD with entire internet history. That's 3 CD's of internet history. Only one CD of over 20,000 images of pornography were given to the defense team. Two CD's of internet history were not made available. See trial transcript and memorandum in support, attached.

GROUND FIVE: Petitioner's constitutional rights were violated when appellant did not receive a fair trial when government witnesses gave false testimony.

Supporting Facts: Petitioner can prove with State's witnesses' testimony and State's evidence that Teresa Ruby gave false testimony when she stated she used her pass-word to sign on to said computer. In fact she used the same password petitioner used to access computer.

GROUND SIX: Petitioner did not receive a fair trial when government evidence was unreliable and flawed. Supporting Facts: States witnesses gave decidedly different testimony on how long computer was in use. Teresa Ruby, Richard Day and Heather Young testified that the computer was new (only two weeks old). States forensic specialist testified that said computer was in use for over 7 months. There are many ways that information can be transferred from computer to computer when they are connected to an office network, which this computer was. See memorandum in support, attached.

GROUND SEVEN: Petitioner's constitutional rights to a fair trial were denied, when the prosecution altered evidence to prejudice the jury. Supporting Facts: Prosecutor or the State enlarged the images, greatly improving the resolution (in exhibit 1) the images petitioner was charged with Teresa Ruby, Ms. Boggs and petitioner all testified that images that they saw on computer were thumbnail pictures, and hard to see. States forensic specialist Ms. Boggs testified that the images in exhibit 1, (the half page size) were not the size that she saw when looking at the evidence. See memorandum in support that is attached. Petitioner will prove these statements with State witness testimony and State's exhibits.

GROUND EIGHT: Petitioner's constitutional rights were denied when he did not receive a fair trial because all evidence was tampered with and handled by persons not in authority or with training. Supporting Facts: The computer in question was handled and accessed no less than 6 times after petitioner last used it. Two times using the same password petitioner used. State's forensic system specialist Ms. Boggs testified how easily electronic evidence is altered and that it is important to leave computer examinations to the experts. Ms. Boggs testified that she would have been very concerned had she known that the computer in question had been turned on while still hooked up to the internet. Petitioner will prove all these statements in memorandum in support with State's witness testimony and State's exhibits. See memorandum in support, attached.

GROUND NINE: Petitioner's rights were violated when he did not receive a fair trial due to improperly handled and gathered evidence. Supporting Facts: Petitioner will prove that computer was accessed over 6 times after he last used it and it was still hooked up to the internet. Mr. Boggs testified that every time you turn on a computer you "make changes to access times." Ms. Boggs testified that every time you turn on a computer you "make changes to access times." Ms. Boggs testified, stating that it would have been a concern to her had she know that an officer, or lay person had searched or investigated said computer. In essence, every time someone accessed said computer to investigate, all data was altered, especially when two CD discs were made by a Robertson Construction Company.

6

(Dkt. # 3.)

### A. Grounds One, Two, and Three.

The Warden argues that Hurst has waived his first, second, and third grounds for relief due to procedural default because Hurst failed to file a timely appeal in the Supreme Court of Ohio. The Warden also argues that Hurst has procedurally defaulted his first ground for relief by failing to raise a contemporaneous objection at trial.

### 1. Timely appeal

It is well-established that, on federal habeas corpus review, a district court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed*, 489 U.S. 255, 260-62 (1989). The Sixth Circuit has held that a Supreme Court of Ohio entry denying a prisoner's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of that prisoner's habeas corpus petition. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). This rule applies even when the entry is unexplained. *Id.* (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)).

When a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, a district court may only review the claims if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or if he can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). "Since both cause and prejudice must be shown to excuse a procedural default, the failure to

establish cause eliminates the need to consider prejudice." *Bonilla*, 370 F.3d at 497 (citing *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986)).

To establish cause, a petitioner must show that "some objective factor external to the defense" prevented his compliance with the state procedural rule. *Id.* at 498 (quoting *Carrier*, 477 U.S. at 488). To demonstrate the potential for a miscarriage of justice, a petitioner must show that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To do so, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.*

In the instant case, Hurst failed to file a timely appeal in the Supreme Court of Ohio. Although he attempted to file a delayed appeal, the Supreme Court denied his motion. Therefore, in order to maintain Grounds One, Two, and Three, Hurst must demonstrate cause for the default and prejudice or a potential fundamental miscarriage of justice. Hurst has provided the following explanations for his default in his motion for delayed appeal and the Petition: he lacked the assistance of counsel and "the experience to adequately present and prepare his cause," he had limited library access, he had no help, he was unaware of the time limits, and the Supreme Court of Ohio returned his filings rather than accepting them. (Dkt. # 3 at 3; Dkt. # 13-6 at 27.)

"[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The right does not extend to discretionary appeals or collateral post-conviction proceedings. *Id.* In addition, the Sixth Circuit has repeatedly held that lack of access to resources or research materials is insufficient to serve as cause in a habeas case. *Bonilla*, 370 F.3d at 498; *Abshear v. Moore*, 2009 U.S. App. LEXIS


26543, at *20 (6th Cir. Dec. 3, 2009). Moreover, "ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse . . . procedural default." *Bonilla*, 370 F.3d at 498. Finally, Hurst has provided no support for his allegations that Supreme Court of Ohio employees are responsible for his failure to file a timely appeal when Hurst clearly failed to comply with that court's rules.

Since none of Hurst's arguments demonstrate cause to excuse his procedural default, and as Hurst has not presented evidence sufficient to establish actual innocence[4], the Court finds that Grounds One, Two, and Three are waived.

### 2. Failure to object

The Warden next argues that Hurst has further defaulted Ground One by failing to raise a contemporaneous objection at trial to the error alleged in that claim. Ground one alleges that Hurst's "conviction for illegal use of a minor in nudity oriented material was void as a matter of law for failing to state a culpable mental state." Specifically, Hurst contends that "recklessly" was not written into the indictment and should, therefore, not have been given in his jury instructions at trial.

"Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167-68 (1982) (". . . to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains.")

---

[4] Hurst's Motion for Leave to Supplement is hereby **GRANTED**. (Dkt. # 25.) However, the Court finds that the two cases cited in Hurst's Motion for Leave to Supplement are distinguishable from the instant case. Both *United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011) and *United States v Flyer*, 2011 U.S. App. LEXIS 2362 (9th Cir. Feb. 8, 2011) interpret a federal pornography statute and not the Ohio statute under which Hurst was convicted.

The state appeals court held that Hurst did not object to the indictment or the trial court's jury instructions. (Dkt. # 13-5 at 78). Since Hurst has failed to provide any basis to excuse this particular procedural default, and he has not established actual innocence, he has waived his first ground for relief.

**B. Grounds Four Through Nine.**

**1. Procedural default**

The Warden argues that Hurst has procedurally defaulted Grounds Four through Nine by failing to present them to the Ohio courts. In these grounds, Hurst alleges that he did not receive a fair trial because: (1) the government withheld evidence, (2) government witnesses provided false testimony, (3) the evidence introduced by the government at trial was unreliable and flawed, (4) the evidence was altered, and (5) the evidence was tampered with and handled by persons without authority or training.

In his Petition, Hurst concedes that he did not present Grounds Four through Nine on direct appeal. (Dkt. # 3 at 12.) He would now be barred from raising them in state court by Ohio's rule of *res judicata*. *See State v. Cole,* 2 Ohio St.3d 112, 113-14 (1982); *State v. Ishmail,* 67 Ohio St.2d 16, 18 (1981). Therefore, Grounds Four through Nine are procedurally defaulted and may not be raised as grounds for federal habeas relief unless Hurst can show cause to excuse his failure to raise the claims in state court. *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).

**2. Cause/exhaustion**

Hurst asserts that his failure to present Grounds Four through Nine to the Ohio courts was a result of his appellate counsel's constitutionally ineffective assistance. While counsel's neglect may serve as cause to excuse procedural default, a claim of ineffective assistance of counsel can itself be procedurally defaulted and must be properly exhausted in state court. *See Edwards v.*

*Carpenter*, 529 U.S. 446, 453 (2000); *Carrier*, 477 U.S. at 489 (". . . the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." ).

A state prisoner must exhaust his state remedies by fairly presenting federal claims to the state courts before seeking federal habeas corpus relief on such claims. *Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005). In other words, "a habeas petitioner must give the state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack his state court conviction." *Picard v. Connor,* 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[A]state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")). Therefore, the Court cannot consider Hurst's claim of ineffective assistance of appellate counsel—which Hurst has offered to serve as cause for his procedural default—unless the Ohio courts have first had an opportunity to correct the alleged constitutional deficiency.

In his Reply, Hurst asserts that he was barred from raising the issue of ineffective assistance of appellate counsel by the Supreme Court of Ohio when that court denied his motion for delayed appeal. However, the Warden points out that Hurst still has available to him the option of bringing a delayed application for reopening in the state appeals court, pursuant to Ohio Rule of Appellate Procedure 26(B), based on claims of ineffective assistance of appellate counsel. The rule provides:

> (1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment *unless the applicant shows good cause for filing at a later time*.

11

Ohio R. App. P. 26(B)(1) (emphasis added).

Therefore, Hurst has failed to exhaust this state court remedy and deciding his claims of ineffective assistance of appellate counsel would put the Court "in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available." *Carrier*, 477 U.S. at 489.

## V. CONCLUSION

The Court finds that Hurst has defaulted Grounds One through Three of his Petition and that Hurst may have defaulted Grounds Four through Nine, pending a determination of whether he can demonstrate cause and prejudice to excuse the default. The Petition is a mixed petition, as described in *Rose v. Lundy*, 455 U.S. 509 (1982), because Hurst's appellate counsel effectiveness claim that he has offered as cause and prejudice to excuse the default of Grounds Four through Nine was never presented, and still can be presented, to the state courts.

## VI. ORDER FOR PETITIONER TO RESPOND

Hurst shall, within thirty (30) days, inform the Court whether he wishes to: (1) abandon his claim of ineffective assistance of appellate counsel or (2) maintain this claim and attempt to exhaust it in state court.

If Hurst chooses option one and opts to abandon his claim of ineffective assistance of appellate counsel, he shall submit a signed statement to that effect.

If Hurst chooses option two and opts to maintain his claim of ineffective assistance of appellate counsel, the Court will subsequently provide both parties the opportunity to brief the issue of whether the Court has the ability to exercise its discretion, pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to stay this matter and hold its decision in abeyance while Hurst attempts to exhaust his remaining state court remedy, or, if the Court must dismiss the Petition while Hurst

attempts to exhaust his state court remedy.

**IT IS SO ORDERED.**

                 **/s/ Peter C. Economus – June 6, 2011**
                 **PETER C. ECONOMUS**
                 **UNITED STATES DISTRICT JUDGE**